IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

KCOOPER BRANDS, INC. D/B/A
DEMPSEY INTERNATIONAL PACKAGING,

        Plaintiff,

    v.                                        Civil Action No. 22-cv-00194

EZZIGROUP INC., AND RAY RASOULI,

        Defendants.

---

## PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS

---

Plaintiff KCooper Brands Inc., d/b/a Dempsey International Packaging ("Dempsey"), by and through undersigned counsel, submits its Answer and Affirmative Defenses to Defendants' Counterclaims in the above-captioned matter.

### PARTIES

1. **KCooper Brands, Inc. d/b/a Dempsey International Packaging ("Dempsey") is a Colorado corporation located at 27371 E Lakeview Dr., Aurora, Colorado 80016.**

**RESPONSE:** Dempsey admits the allegations in paragraph 1.

2. **Ezzigroup Inc. ("Ezzi") is a corporation registered in the province of Ontario, Canada with its principal offices in Ontario, Canada.**

**RESPONSE:** Dempsey admits the allegations in paragraph 2.

3. **Ray Rasouli is a citizen and resident of Canada and Ezzi's CEO.**

**RESPONSE:** Dempsey admits the allegations in paragraph 3.

## JURISDICTION AND VENUE

4.     **This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.**

**RESPONSE:** Dempsey admits the allegations in paragraph 4.

5.     **Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Counterclaims occurred in Colorado.**

**RESPONSE:** Dempsey admits the allegations in paragraph 5.

6.     **This Court has specific personal jurisdiction over Ezzi because this action rises out of its contacts with this forum.**

**RESPONSE:** Paragraph 6 contains conclusions of law to which no response is required; to the extent that a response is required, Dempsey admits the allegations in paragraph 6.

7.     **This Court does not have personal jurisdiction over Ray Rasouli for the reasons stated in the simultaneously filed Motion to Dismiss.**

**RESPONSE:** Dempsey denies the allegations in paragraph 7.

## FACT ALLEGATIONS

8.     **The Product Supply Agreement (Agreement) between Dempsey and Ezzi became effective on July 23, 2021.**

**RESPONSE:** Dempsey admits the allegations in paragraph 8.

9.     **The Agreement is attached as Ex. A.**

**RESPONSE:** Dempsey admits the allegations in paragraph 9.

10.     **For a term of 2 years, Dempsey planned on purchasing approximately 40,000 cases (400,000 boxes) of product per month for every month of the Term.**

**RESPONSE:** Dempsey denies the allegations in paragraph 10. The Agreement states that Ezzi was to fill Dempsey's "projected demand" as "determined by a rolling forecast and at Dempsey's direction." Purchase orders were to be submitted "from time to time."

11.     **Orders were to commence August 15, 2021.**

**RESPONSE:** Dempsey denies the allegations in paragraph 11.

12.     **Purchase orders were required to be submitted 90 days in advance of delivery.**

**RESPONSE:** Dempsey denies the allegations in paragraph 12.

13.     **Section 7 of the Agreement states that "Supplier shall deliver the Products to a location designated by Dempsey (the "Delivery Point") as defined in the attached Exhibit A, within the specified lead time of receipt of a Purchase Order" (emphasis added).**

**RESPONSE:** The terms of the Agreement speak for themselves. To the extent the allegations of this paragraph are consistent with the Agreement Dempsey denies them.

14.     **Exhibit A does not specify a "Delivery Point".**

**RESPONSE:** Dempsey denies the allegations in paragraph 14 to the extent that the "Delivery Point" is defined in Section 7 as "a location designated by Dempsey."

15.     **Ezzi was to be responsible for freight and insurance charges to the mutually agreed delivery point, and Dempsey was to be responsible for those charges beyond that point.**

**RESPONSE:** Dempsey admits that Ezzi was to be responsible for freight and insurance charges to the delivery point, and that Dempsey would be responsible for charges after delivery. All remaining allegations of this paragraph are denied.

16. **Ezzi informed Dempsey that its contract manufacturer had to make up-front investments in equipment and tooling in order to meet the contract volumes over the two year period of the Agreement.**

**RESPONSE:** Dempsey denies the allegations in paragraph 16.

17. **The investments totaled approximately $400,000.**

**RESPONSE:** Dempsey denies the allegations in paragraph 17.

18. **Before the Agreement was executed, Ezzi received an initial purchase order from Dempsey for 200,000 boxes dated July 8, 2021.**

**RESPONSE:** Dempsey admits the allegations in paragraph 18.

19. **Ezzi accepted this early purchase order.**

**RESPONSE:** Dempsey admits the allegations in paragraph 19.

20. **Pursuant to the 90 day delivery term, delivery on the July 8 purchase order was due by October 6, 2021.**

**RESPONSE:** Dempsey denies the allegations in paragraph 20.

21. **The first shipment of product departed from China by sea on July 20, 2021.**

**RESPONSE:** Dempsey denies the allegations in paragraph 21.

22. **The second month's purchase order (for August 2021) for 400,000 boxes was received by Ezzigroup on August 5, 2021, prior to the date specified for the first order.**

**RESPONSE:** Dempsey admits that it submitted a purchase order for 400,000 boxes on or around August 15, 2021. Dempsey denies the remaining allegations in paragraph 22.

23.     **In August of 2021, a worldwide backlog developed for oversea shipments due to the Covid-19 pandemic and related conditions.**

**RESPONSE:** Dempsey lacks information sufficient to form a belief as to the truth of the allegations in paragraph 23 and so denies them. Dempsey particularly denies that any such backlog excused Ezzi's duties under the Agreement, including but not limited to its obligation to pay for the product it shipped.

24.     **The entire supply chain was affected by labor shortages, port congestions, shortages of truckers and chassis, and lack of logistics capabilities to offload and deliver containers.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 and so denies them. Dempsey particularly denies that any such effects excused Ezzi's duties under the Agreement, including but not limited to its obligation to pay for the product it shipped.

25.     **The lag time for ships to dock at Los Angeles was more than two weeks.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 and so denies them. Dempsey particularly denies that any such lag time excused Ezzi's duties under the Agreement, including but not limited to its obligation to pay for the product it shipped.

26.     **Ezzigroup and the manufacturer agreed to begin shipping the product by air freight.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.

27.    **This process began in early to mid-August 2021, with product starting to arrive at the customer's location the week of August 16, 2021.**

**RESPONSE:** Dempsey denies the allegations in paragraph 27.

28.    **The extra cost for shipping by air freight was approximately $380,000.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28.

29.    **The next purchase order was due in mid-September 2021.**

**RESPONSE:** Dempsey denies the allegations in paragraph 29.

30.    **Dempsey refused to issue additional purchase orders.**

**RESPONSE:** Dempsey denies the allegations in paragraph 30 to the extent they imply that Dempsey was under any obligation to continue issuing additional purchase orders, especially to the extent that Ezzi had failed to fulfill its obligations in connection with purchase orders that had already been issued.

31.    **On September 3, 2021, Dempsey sent Ezzi the letter attached as Ex. B.**

**RESPONSE:** Dempsey admits the allegations in paragraph 31.

32.    **The first delivery was not due until October 6, 2021.**

**RESPONSE:** Dempsey denies the allegations in paragraph 32.

33.    **At the time of Dempsey's September 3 letter, over 205,000 boxes of product had been shipped to the United States.**

**RESPONSE:** Dempsey admits the allegations in paragraph 33 to the extent that Ezzi advised Dempsey that over 205,000 boxes of product had been shipped to the United States, but denies the allegations in paragraph 33 to the extent that those products were not released when they arrived in the port because of Ezzi's failure to pay.

34.     **In a phone conversation between Mr. Rasouli and George Dempsey, Mr. Dempsey stated that Dempsey's September 3 letter was "for show" and was sent only to demonstrate to Dempsey's customer that Dempsey was pressuring the manufacturer to complete delivery as soon as possible.**

**RESPONSE:** Dempsey denies the allegations in paragraph 34.

35.     **By approximately October 6, 2021, the actual due date for the initial purchase order, the Ezzi had shipped 408,330 boxes of product, which was enough to fulfill the two purchase orders for the month of July 2021, which called for 403,200 boxes.**

**RESPONSE:** Dempsey denies the allegations in paragraph 35.

36.     **Ezzi had some control on when product was put on a ship in China.**

**RESPONSE:** Dempsey admits the allegations in paragraph 36.

37.     **Ezzi had no control on when a ship would reach port in the United States.**

**RESPONSE:** Dempsey denies the allegations in paragraph 37.

38.     **Ezzi had no control when the product would be taken off a ship and put on shore.**

**RESPONSE:** Dempsey denies the allegations in paragraph 38.

39.     **In late Summer and Fall of 2021, there was unprecedented congestion in the Los Angeles ports.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 and so denies them. Dempsey particularly denies that any such congestion excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

40.     **Ezzi was not responsible for the port congestion.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 and so denies them. Dempsey particularly denies that any such congestion excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

41.     **Ezzi had no control over the port congestion.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 and so denies them. Dempsey particularly denies that any such congestion excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

42.     **In late Summer and Fall of 2021, there was a shortage of containers.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 and so denies them. Dempsey particularly denies that any such shortage excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

43.     **Ezzi was not responsible for the container shortages.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 and so denies them. Dempsey particularly denies

that any such shortage excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

44.     **Ezzi had no control over the container shortages.**

**<u>RESPONSE:</u>** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 and so denies them. Dempsey particularly denies that any such shortage excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

45.     **In late Summer and Fall of 2021, there were chassis shortages.**

**<u>RESPONSE:</u>** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 and so denies them. Dempsey particularly denies that any such shortage excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

46.     **Ezzi was not responsible for the chassis shortages.**

**<u>RESPONSE:</u>** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 and so denies them. Dempsey particularly denies that any such shortage excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

47.     **Ezzi had no control over the chassis shortages.**

**<u>RESPONSE:</u>** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 and so denies them. Dempsey particularly denies that any such shortage excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

48.     **In late Summer and Fall of 2021, there were labor shortages.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 and so denies them. Dempsey particularly denies that any such shortage excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

49.     **Ezzi was not responsible for the labor shortages.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 and so denies them. Dempsey particularly denies that any such shortage excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

50.     **Ezzi had no control over the labor shortages.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 and so denies them. Dempsey particularly denies that any such shortage excused Ezzi of its contractual obligations, including but not limited to its duty to pay for product it shipped.

51.     **In late Summer and Fall of 2021, Dempsey was aware of the port congestion.**

**RESPONSE:** Dempsey denies being aware of any issue that excuses Ezzi from complying with its contractual obligations.

52.     **In late Summer and Fall of 2021, Dempsey was aware of the container shortages.**

**RESPONSE:** Dempsey denies being aware of any issue that excuses Ezzi from complying with its contractual obligations.

53.     **In late Summer and Fall of 2021, Dempsey was aware of the chassis shortages.**

**RESPONSE:** Dempsey denies being aware of any issue that excuses Ezzi from complying with its contractual obligations.

54. **In late Summer and Fall of 2021, Dempsey was aware of the labor shortages.**

**RESPONSE:** Dempsey denies being aware of any issue that excuses Ezzi from complying with its contractual obligations.

55. **Within two weeks of product starting to arrive in Los Angeles, Dempsey refused to issue more purchase orders.**

**RESPONSE:** Dempsey admits that it did not submit any more purchase orders. Dempsey denies the remaining allegations in paragraph 55. In particular Dempsey denies that it was under any obligation to issue more purchase orders, particularly insofar as Ezzi has yet to comply with its obligations in connection with purchase orders already issued.

56. **Dempsey issued a total of three purchase orders.**

**RESPONSE:** Dempsey admits the allegations in paragraph 56.

57. **The Agreement was for 400,000 boxes of dry wipes for a two-year period.**

**RESPONSE:** Dempsey denies the allegations in paragraph 57.

58. **Ezzi's profit was $0.30 per box.**

**RESPONSE:** Dempsey is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58.

59. **Ezzi's monthly gross profit was to be $120,000.**

**RESPONSE:** Dempsey denies the allegations in paragraph 59.

60. **Ezzi's gross profit for the twenty-four month period would have been $2,880,000.**

**RESPONSE:** Dempsey denies the allegations in paragraph 60.

61.     **Dempsey paid Ezzi a total of $ 1,272,426, amounting to 1.37 months' worth of revenue.**

**RESPONSE:** Dempsey denies the allegations in paragraph 61.

62.     **Ezzi's loss in earnings is approximately $ 2,880,000.**

**RESPONSE:** Dempsey denies the allegations in paragraph 62.

63.     **Ezzi is also due $87,000 as a second milestone payment of 30% on fifteen containers.**

**RESPONSE:** Dempsey denies the allegations in paragraph 63.

64.     **The second milestone payment was due upon the booking of freight / issuance of a BOL from China.**

**RESPONSE:** Dempsey denies the allegations in paragraph 64 to the extent they imply that Dempsey has not paid the 30% payment for any containers in connection with which the condition for issuing the 30% payment has been met. Dempsey denies any remaining allegations in paragraph 64.

65.     **Ezzi continued to supply Dempsey with product after September 3, 2021, and up to Jan 2022.**

**RESPONSE:** Dempsey denies the allegations in paragraph 65.

## COUNT 1 (BREACH OF CONTRACT)

66.     **Ezzi realleges and incorporates all prior paragraphs of this Counterclaim.**

**RESPONSE:** Dempsey hereby incorporates the responses set forth in the previous paragraphs of this Answer as if fully set forth herein.

67.     **Dempsey and Ezzi entered into a binding Agreement, which is attached as Ex. A.**

**RESPONSE:** Dempsey admits the allegations in paragraph 67.

68.     **Dempsey breached the Agreement as alleged in the Fact Allegations, including by repudiating the Agreement and failing to: issue purchase orders at a rate of 40,000 cases per month over a period of two years; make required payments; honor the terms and conditions of the Agreement; and continue the issuance of purchase orders.**

**RESPONSE:** Dempsey denies the allegations in paragraph 68.

69.     **Ezzi complied with all its obligations under the Agreement or is excused from performance due to Dempsey's material breaches and the Force Majeure conditions described in Ezzi's Affirmative Defenses.**

**RESPONSE:** Dempsey denies the allegations in paragraph 69.

70.     **Ezzi has satisfied any and all conditions precedent to bring this lawsuit.**

**RESPONSE:** Dempsey denies the allegations in paragraph 70.

71.     **Ezzi suffered damages as a result of Dempsey's breaches, including but not limited to loss of revenues, the extra costs incurred to meet Dempsey's demands, amounts Ezzi has had to pay to reduce the delays being caused by the Force Majeure conditions, and attorney's fees and costs.**

**RESPONSE:** Dempsey denies the allegations in paragraph 71.

## COUNT 2 (PROMISSORY ESTOPPEL)

72.     **Ezzi realleges and incorporates all prior paragraphs of this Counterclaim.**

**RESPONSE:** Dempsey hereby incorporates the responses set forth in the previous paragraphs of this Answer as if fully set forth herein.

73. **Dempsey made a promise to Ezzi that it would purchase product for a two year period.**

**RESPONSE:** Dempsey denies the allegations of paragraph 73.

74. **Dempsey reasonably should have expected that its promise would induce action by Ezzi.**

**RESPONSE:** Dempsey denies the allegations of paragraph 74.

75. **Ezzi reasonably relied on the promise to its own detriment.**

**RESPONSE:** Dempsey denies the allegations in paragraph 75.

76. **Dempsey's promise must be enforced to prevent injustice.**

**RESPONSE:** Dempsey denies the allegations in paragraph 76.

## COUNT 3 (UNJUST ENRICHMENT)

77. **Ezzi realleges and incorporates all prior paragraphs of this Counterclaim.**

**RESPONSE:** Dempsey hereby incorporates the responses set forth in the previous paragraphs of this Answer as if fully set forth herein.

78. **Ezzi asserts this unjust enrichment claim in the alternative to its contract-based claims.**

**RESPONSE:** Paragraph 78 contains a non-substantive fact to which no response is required.

79. **Ezzi conferred a benefit upon Dempsey in the form of delivery of product.**

**RESPONSE:** Dempsey denies the allegations in paragraph 79. Dempsey has paid Ezzi for substantially more product than Ezzi has provided.

80.      **Dempsey received that benefit at Ezzy's expense.**

**RESPONSE:** Dempsey denies the allegations in paragraph 80.

81.      **Under the circumstances, it is unjust for Dempsey to retain that benefit without compensating Ezzi.**

**RESPONSE:** Dempsey denies the allegations in paragraph 81.

82.      **The benefits Dempsey received from Ezzi should be returned to Ezzi.**

**RESPONSE:** Dempsey denies the allegations in paragraph 82.

## COUNT 4

83.      **Ezzi realleges and incorporates all prior paragraphs of this Counterclaim.**

**RESPONSE:** Dempsey hereby incorporates the responses set forth in the previous paragraphs of this Answer as if fully set forth herein.

84.      **There is a justiciable controversy between the parties concerning performance of obligations under the Agreement.**

**RESPONSE:** Paragraph 84 contains a legal conclusion to which no response is required; to the extent that a response is required, Dempsey admits those allegations.

85.      **Ezzi requests that the Court declare that any failure on Ezzi's part to fulfill all of the obligations imposed by the Agreement are excused because of Force Majeure conditions and impossibility of performance.**

**RESPONSE:** Dempsey denies that Ezzi's obligations under the Agreement are excused by these or any other bases.

## **GENERAL DENIAL**

Dempsey denies every allegation that is not specifically admitted to in each separately pled allegation. Dempsey denies any allegation appearing in any unnumbered paragraph in Defendants' Counterclaims, including titles and headings. Any matter denied that should be pleaded as an affirmative defense is to be interpreted as an affirmative defense and any affirmative defense that should be pleaded as a denial should be interpreted as a denial.

## **AFFIRMATIVE DEFENSES**

### I.   FORCE MAJEURE

Defendants' Counterclaims are barred in whole or in part by the Force Majeure provision found in Section 19 of the Agreement.

### II.   ESTOPPEL

Defendants are estopped from enforcing in whole or in part of the alleged rights, claims, and obligations it seeks to enforce against Dempsey as inconsistent with its own representations to Dempsey.

### III.   REPUDIATION

Defendants' Counterclaims are barred in whole or in part because Defendants asserted that Ezzi would not perform under the contract, and therefore no further performance was required by Dempsey.

### IV.   MISREPRESENTATIONS

Defendants' Counterclaims against Dempsey are barred in whole or in part because Defendants obtained Dempsey's consent to the Agreement through fraud, deceit, or mispresentation.

### V.      FAILURE TO STATE A CLAIM

Defendants' Counterclaims fail, in whole or in part, to state a claim upon which relief can be granted.

### VI.      LACK OF DAMAGES

Defendants' Counterclaims are barred in whole or in part because their alleged damages, if any, are too speculative and uncertain.

### VII.      BREACH OF CONTRACT

Defendants failed to comply with the terms of the Agreement and are therefore barred in whole or in part from asserting any cause of action against Dempsey, or its claimed damages must be offset by the amount of damages caused by Defendants' own failure to comply with the Agreement.

### VIII.      FAILURE TO SATISFY CONDITIONS PRECEDENT

Defendants' claims are barred in whole or in part due to their failure to satisfy conditions precedent to Dempsey's performance of any duties under the Agreement.

### IX.      SETOFF AND RECOUPMENT

Defendants' claims are barred in whole or in part under the doctrines of setoff and recoupment.

### X.      UNCLEAN HANDS

Dempsey asserts that Defendants committed a wrongdoing, and its Counterclaims are attempting to benefit from this wrongdoing. Therefore, Defendants' Counterclaims against Dempsey are barred under the doctrine of unclean hands.

Dated: March 18, 2022                    Respectfully submitted,


                                         */s/ Douglas N. Marsh*
                                         Douglas N. Marsh
                                         Lance Hernandez
                                         ARMSTRONG TEASDALE LLP
                                         4643 South Ulster Street, Suite 800
                                         Denver, Colorado 80237
                                         Tel.: 720-200-0676
                                         Fax: 720-200-0679
                                         dmarsh@atllp.com
                                         lhernandez@atllp.com

                                         *Attorneys for Dempsey International Packaging*


## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2022, I served a true and correct copy of the foregoing **PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS** via the Colorado Courts E-filing System.


                                         By: */s/ Jana Lusk*