IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00194-MEH

KCOOPER BRANDS, INC.,
d/b/a Dempsey International Packaging,

    Plaintiff,

v.

EZZIGROUP, INC. and
RAY RASOULI,

    Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is the Motion to Dismiss (ECF 9) by the individual Defendant Ray Rasouli ("Rasouli"). The Motion is fully briefed (including a Sur-Reply), and the Court finds that oral argument will not materially assist in its adjudication. Based upon the record herein and for the reasons that follow, the Motion is denied.

## BACKGROUND

### I.  Alleged Facts

The Court accepts as true for present purposes the allegations Plaintiff raises in its Complaint (ECF 1). There, Plaintiff describes itself as a Colorado business that sells packaging materials and sanitation wipes to other businesses. *Id*. at ¶ 12. In July 2021, Plaintiff learned of Ezzigroup, Inc., as a potential supplier of sanitation wipes. *Id*. at ¶¶ 13-14. Ezzigroup, Inc. presented itself as having a special relationship with the Canadian government as a preferred supplier of PPE masks and gloves that it received in Canada from China by air freight. *Id*. at ¶ 18.

Plaintiff made clear its need for delivery that was both timely and at the agreed-upon price to permit it to satisfy its obligations with its own customers. *Id*. at ¶¶ 20-21.

Plaintiff alleges that Ezzigroup, Inc., through Plaintiff's discussions with its CEO, Rasouli, made certain representations about its ability to supply Plaintiff's product needs. However, Rasouli overstated Ezzigroup, Inc.'s ability to meet those supply needs, Plaintiff complains.

According to Plaintiff, Rasouli said Ezzigroup, Inc. owns and operates a factory in China that could supply the product. Moreover, Ezzigroup, Inc. had a unique relationship with the Chinese government that facilitates its ability to ship the product easier and to sell it at a cheaper price than the normal situation. *Id*. at ¶¶ 2, 15-17. Should any difficulty obtaining the Chinese-sourced product actually arise, then Ezzigroup, Inc. had the ability to relocate its Chinese equipment to Canada to manufacture the product there. *Id*. at ¶ 18. Alternatively, Ezzigroup, Inc. could make the product at its Tennessee facility. *Id*. at ¶ 19.

Relying on those representations, Plaintiff placed orders on July 8 and again on July 14, 2021 for sanitization wipes. Ezzigroup, Inc. was to deliver the product directly to Plaintiff's customer in Tennessee on August 15, 2021. *Id*. at ¶¶ 22-23. On July 23, 2021, Plaintiff entered a Product Supply Agreement with Ezzigroup, Inc. to set forth the terms for fulfilling subsequently placed orders. *Id*. at ¶¶ 24-35. Plaintiff's first order pursuant to the Product Supply Agreement was placed on August 5, 2021. *Id*. at ¶ 36.

As soon as September 3, 2021, Plaintiff regarded Ezzigroup, Inc. to be in breach of the contract. *Id*. at ¶¶ 39-40. Plaintiff says it has suffered various damages from obtaining a replacement product, meeting its obligations with its own customers to preserve those relationships, and resolving disputes with shippers. *Id*. at ¶¶ 50-54.

Plaintiff since has learned that Ezzigroup, Inc. does not own or operate a factory in China. Rather, Ezzigroup, Inc. obtained the product from a third-party Chinese business which in turn obtained them from a Chinese government factory. *Id*. at ¶¶ 55-56. Plaintiff further alleges that the special export rebates that Rasouli said Ezzigroup, Inc. receives from the Chinese government was in fact a fraudulent tax scheme. *Id*. at ¶¶ 58-59.

Plaintiff and Ezzigroup, Inc. (through Rasouli) discussed how to resolve the difficulties with the orders. However, Plaintiff does not believe the explanations and assertions that Rasouli made and regards his "excuses" as "facially deficient." *Id*. at ¶¶ 67-75. Plaintiff also disagrees with the assertion that its cessation of new orders excuses Ezzigroup, Inc.'s failure to perform. *Id*. at ¶ 69.

**II.     Claims for Relief**

At issue is Plaintiff's contention that Ezzigroup, Inc. did not supply the requested product as Defendants said it would and as Ezzigroup, Inc. contractually agreed to do. As against both Ezzigroup, Inc. and Rasouli, Plaintiff brings claims of fraudulent misrepresentation (Count 1) and fraud by omission (Count 2). As against just Ezzigroup, Inc., Plaintiff asserts the claims of breach of contract (Count 3), promissory estoppel (Count 4), and unjust enrichment (Count 5).

Ezzigroup, Inc. has appeared in the lawsuit and has answered the Complaint. In its Answer (ECF 8), it denies the allegations and asserts a variety of affirmative defenses to its inability to fulfill the orders. It also raises counterclaims against Plaintiff for breach of contract, promissory estoppel, and unjust enrichment as well as for a declaratory judgment that its inability to comply with all contractual agreements is excusable.

## **LEGAL STANDARDS**

### I. Fed. R. Civ. P. 12(b)(2) Lack of Personal Jurisdiction

"Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *see also Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 900 (10th Cir. 2017). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Wenz*, 55 F.3d at 1505 (citations and internal quotation marks omitted). *See also Knerr v. Boulder BJ, LLC*, No. 19-cv-00799-JKL-MEH, 2020 WL 5126138, at *2 (D. Colo. Apr. 7, 2020) (permitting consideration of affidavits and evidence outside the complaint and accepting allegations as true to the extent they are uncontroverted by the evidence).

Plaintiff carries the burden of establishing personal jurisdiction, but the burden to make a prima facie showing is light. The Court should resolve all factual disputes in Plaintiff's favor. *AST Sports Science, Inc. v. CLF Distribution, Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

### II. Personal Jurisdiction

"Jurisdiction to resolve cases on the merits requires . . . authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d

797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). The burden of establishing personal jurisdiction is on the plaintiff. *XMission, LC v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020).

In a federal question case, the federal court must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). As there is no federal statute authorizing nationwide personal jurisdiction in this case, Fed. R. Civ. P. 4(k)(1)(A) invokes the Colorado long-arm statute. *Old Republic Ins. Co.*, 877 F.3d at 903. In Colorado, only one inquiry is necessary. The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124(1), "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under the due process standard. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). In other words, the statute's requirements merge into the constitutional due process analysis. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). For a court to exercise personal jurisdiction in harmony with due process, a defendant must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice. The contacts must be of the kind that reasonably should cause a defendant to anticipate being haled into court there. *XMission*, 955 F.3d at 839.

There are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1024 (2021). Plaintiff does not proceed on a theory of general jurisdiction. Rasouli says he is a Canadian citizen and resident of Ontario. ECF 9-1 at ¶ 4. He

denies any business contacts with Colorado other than from his "capacity as the CEO of Ezzigroup, Inc." *Id*. at ¶ 11. Instead, Plaintiff argues that this Court has specific jurisdiction over him.

### A. Specific Jurisdiction

"Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction "has two requirements: (i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of the defendant's forum-related activities." *C5 Med. Werks, LLC v. CeramTec GmbH*, 937 F.3d 1319, 1323 (10th Cir. 2019) (citing *Old Republic Ins. Co.*, 877 F.3d at 903). By meeting those two requirements, a plaintiff establishes the minimum contacts needed for a court to assert jurisdiction over a defendant. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010).

#### 1. Purposeful Availment

The defendant must have taken some act by which he purposefully availed himself of the privilege of conducting activities within the forum state and purposefully directed his activities there. *AST Sports*, 514 F.3d at 1058. The contacts must be the defendant's own choice. The defendant must have deliberately reached out beyond his home, *e.g.*, by exploiting a market in the forum state or entering a contractual relationship centered there. Random, isolated, or fortuitous contacts are insufficient. *Ford*, 141 S.Ct. at 1025. The minimum contacts requirement thereby "assures a reasonable expectation in the out-of-state defendant that he might be brought into court in the state where he sought to do business." *AST Sports*, 514 F.3d at 1057-58.

2.	Relationship Between the Forum Contacts and the Underlying Controversy

Contacts, alone, are insufficient. A plaintiff's claims must arise out of or relate to the defendant's contacts with the forum state. In other words, there must be a connection between the plaintiff's lawsuit and the defendant's activities in the state. The "arise out of" component generally is met when there is a causal relationship between the two. The "relate to" component is met by some other kind of relationship, affiliation, or connection. *Ford*, 141 S.Ct. at 1025-26. The Tenth Circuit has used two approaches to determine whether this requirement is met. The first is whether the plaintiff can show the "defendant's forum-related activities were an 'event in the causal chain leading to plaintiff's injury.'" *Tomelleri v. MEDL Mobile, Inc.*, 657 F. App'x 793, 796 (10th Cir. 2016) (quoting *Dudnikov*, 514 F.3d at 1078). The second is "whether any of the defendant's contacts with the forum are relevant to the merits of plaintiff's claim." *Id.* In sum, a court must examine both the quantity and quality of the defendant's own contacts with the forum state. *OMI Holdings, Inc.*, 149 F.3d at 1092.

**B.	The Unreasonable Exercise of Jurisdiction**

If the plaintiff makes the above prima facie showing, a court still may decline to exercise personal jurisdiction over a defendant if doing so would be unreasonable. *OMI Holdings, Inc.*, 149 F.3d at 1091. Unreasonableness is assessed by considering (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *XMission*, 955 F.3d at 840. This requirement ensures that the exercise of personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *AST Sports*, 514 F.3d at 1059. The defendant has the burden of disproving reasonableness. *Gordon*

*Howard Assocs., Inc. v. Lunareye, Inc.*, No. 13-cv-01829-CMA-MJW, 2013 WL 5637678, at *2 (D. Colo. Oct. 15, 2013).

Of the above factors, the burden on the defendant is primary. *AST Sports*, 514 F.3d at 1061. That concern is heightened when the defendant not only is out-of-state, but out-of-country. *Id*. On the other hand, modern means of transportation and communication reduce the burden on a party to defend himself in a different state (especially if he already engaged in economic activity there). *Id*.

### III.     Fed. R. Civ. Rule 12(b)(6) Failure to State a Claim

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Twombly* requires a two-prong analysis. First, a court must exclude "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–80. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the well-pleaded averments state a plausible claim for relief, then it survives a motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). "The plausibility standard does not require a showing of probability that 'a defendant has acted unlawfully,' but requires more than 'a sheer possibility.'" *Parshall v. Health Food Assocs., Inc.*, No. 14-4005-JAR, 2014 WL 2547761, at *1 (D. Kan. June 5, 2014). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*.

## ANALYSIS

Ezzigroup, Inc. has answered the Complaint and asserted its own counterclaims, but its Co-Defendant Rasouli moves for dismissal. He raises two arguments for why he should be dismissed from this lawsuit. First, he denies that this Court has personal jurisdiction over him, and second, even if it does, he argues that Plaintiff does not plead a plausible fraud claim against him.

### I.    Personal Jurisdiction

The Court details above the standard for pleading a prima facie basis for exercising personal jurisdiction over an out-of-state (and in this case, an out-of-country) individual defendant. Pursuant to that standard, the Complaint reasonably supports finding that specific jurisdiction exists over Rasouli.

Assuming its allegations as true, Plaintiff (a Colorado business) negotiated with Rasouli (as Ezzigroup, Inc.'s representative) to supply its product needs. Even if Rasouli did not travel to Colorado but rather communicated with Plaintiff from Canada, he nevertheless purposefully directed those communications to a Colorado business to meet the standard's minimum contact requirement. While communications alone may not necessarily suffice, doing so in pursuit of a business relationship with a Colorado business does constitute a purposeful and knowing availment. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004). Moreover, the present legal dispute directly arises from and concerns those discussions.

Nor would exercising personal jurisdiction offend traditional notions of fair play and substantial justice. Rasouli is not a third party to the dispute. Although Plaintiff's contract is with the Ezzigroup, Inc. corporate entity, Rasouli acted on Ezzigroup, Inc.'s behalf. Obviously, in practical terms, defending against a lawsuit venued in Colorado will imposes burdens on Rasouli, but not to an unreasonable degree. As Ezzigroup, Inc.'s corporate officer, he already is involved

in this lawsuit both in defending the corporation against Plaintiff's claims and in prosecuting its counterclaims against Plaintiff. Moreover, this lawsuit arises from a failed business relationship by which Rasouli's corporation purportedly would supply significant quantities of product to the United States. This case also does not present the situation in *Benton* in which Canadian law governed the dispute. 375 F.3d at 1080. The remaining due process factors do not weigh against the exercise of personal jurisdiction. To the contrary, Plaintiff's accusation that Rasouli caused it tortious injury itself creates a nexus between him and Colorado. *First Horizon Merchant Servs., Inc. v. Wellspring Capital Mgmt., LLC*, 166 P.3d 166, 174 (Colo. App. 2007).

Rasouli concedes the existence of specific jurisdiction over his company, Ezzigroup, Inc. ECF 8 at ¶ 6; ECF 9 at 3. Rasouli's argument is that personal jurisdiction does not extend to him simply because he is its CEO. Whether only Ezzigroup, Inc. can be found liable because Rasouli merely acted as its agent or employee is beyond the scope of this ruling. At issue here is the much narrower question of whether this Court may exercise personal jurisdiction over Rasouli. As to that particular issue, Rasouli cites no case law that persuades this Court that his actions (which otherwise constitute purposeful development of an opportunity with a Colorado business) are irrelevant because he did them as Ezzigroup, Inc.'s corporate officer. Rather, the case law suggests that his role as a corporate officer does not defeat jurisdiction. The court in *First Horizon* found specific personal jurisdiction over two corporate officers for their role in inducing the plaintiff to maintain a creditor relationship with the defendant corporation. 166 P.3d at 176. In his Reply, Rasouli cites *Rockwood Select Asset Fund v. Devine, Millimet & Branch, PA*, 750 F.3d 117 (10th Cir. 2014), but it is distinguishable. That plaintiff was a lender who was suing a borrower's law firm for issuing an opinion letter that contained falsehoods about the borrower's credit worthiness. The Tenth Circuit found insufficient contacts with Utah (the plaintiff-lender's place of business)

from the defendant-law firm's act of issuing the opinion letter in New Hampshire, even if the defendant knew plaintiff was a Utah business; the lender requested the letter telephonically from Utah; and defendant addressed the letter to Utah. An additional fact was the involvement of a third party (who played no decision-making role whether to make the loan) who picked up the letter in New Hampshire. Rasouli's contacts with Colorado may not be as extensive as the defendant corporate officer in *AST Sports*, 514 F.3d at 1059-60, who traveled extensively to the state both generally and for the purpose of developing the failed business undertaking. However, Rasouli's and Ezzigroup, Inc.'s development of the business relationship with Plaintiff exceed those in *Rockwood*.

Plaintiff pleads a prima facie basis for exercising personal jurisdiction over Rasouli in addition to Ezzigroup, Inc. The Court therefore denies his Rule 12(b)(2) request for dismissal.

## II.     Failure to State a Claim

Rasouli argues in effect that he cannot be found personally liable for any of Plaintiff's claims for relief and that the focus of Plaintiff's grievance instead should be on Ezzigroup, Inc. It is too early to answer the question of whether Rasouli ultimately will be found liable on the merits of any of Plaintiff's claims. At this juncture the Court need only decide whether there is any legal bar to Plaintiff's ability to sue him individually or alternatively whether Plaintiff's claims are implausible. Rasouli does not persuade this Court that any such defect exists.

The contract between Plaintiff and Ezzigroup, Inc. may contain clauses that describe it as the final and complete expression of the parties' agreement with no external promises, representations, or other statements. However, such boilerplate clauses (not couched in clear and specific language) do not present a general bar to the tort claim of misrepresentation. *Ivar v. Elk River Partners, LLC*, 705 F.Supp.2d 1220, 1240 (D. Colo. 2010) (emphasizing the need for an

integration or non-reliance contract clause to be clear and specific for it to preempt a tort claim); *Int'l Monetary Exch., Inc. v. First Data Corp.*, 63 F.Supp.2d 1261, 1264 (D. Colo. 1999) (declining to dismiss a fraud claim on the basis of a contract's integration clause); *Colo. Coffee Bean, LLC v. Peabody Coffee, Inc.*, 251 P.3d 9, 19 (Colo. App. 2010) (holding that the contract's exculpatory clause did not preclude a nondisclosure claim); *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 72-73 (Colo. 1991) (stating the general rule that a general integration clause does not bar a claim for negligent or fraudulent misrepresentation). On the basis of Rasouli's limited legal argument, the Court sees no legal bar to Plaintiff's ability to proceed with its tort claims.

Next, Rasouli contends that Plaintiff does not state with particularity the circumstances constituting the claimed fraud in compliance with Fed. R. Civ. P. 9(b). That pleading rule requires a plaintiff to allege "the who, what, when, where, and how of the alleged fraud," or stated differently, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010) (internal citations omitted). While Rasouli says that Plaintiff could state even more details than it did, the Court finds the pleading detailed enough to comply with Rule 9(b). The Complaint makes clear what misrepresentations and omissions induced its reliance and the context and time frame in which they were made. In other words, the fraud-based claims are pleaded with sufficient particularity to avoid dismissal.

Moreover, those allegations (if true) are sufficient to indicate Rasouli's direct involvement in inducing Plaintiff's reliance. If Rasouli in some way "approved of, directed, actively participated in, or cooperated in the [tortious] conduct," then he potentially could be found individually liable, even if he was acting as Ezzigroup, Inc.'s agent or employee. *Hoang v. Arbess*, 80 P.3d 863, 868 (Colo. App. 2003). The law generally permits holding an agent liable for his own

torts even if he committed them on behalf of a principal. *Galie v. RAM Assocs. Mgmt. Servs., Inc.*, 757 P.2d 176, 177 (Colo. App. 1988).

## CONCLUSION

At least on the basis of the present arguments, the Court finds Plaintiff's claims against Rasouli to be plausible. Whether Plaintiff can prevail on the merits of its claims and hold Rasouli individually liable remains to be determined. Nor does the Court see a due process impediment to Rasouli being made to defend against them in the District of Colorado.

Accordingly, the Motion to Dismiss [filed February 25, 2022; ECF 9] is **denied.**

Entered and dated this 12th day of May, 2022, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge